The first case today is number 22-1807, United States v. Juan Rodriguez, and number 23-1255 and number 23-1256, United States v. Junito Melendez. At this time, would counsel for Appellant Melendez please introduce himself on the record to begin? Good morning, Your Honors. And may it please the Court, my name is Jonathan Shapiro, and I represent the Appellant Junito Melendez in numbers 23-1255, which is a Hobbs Act robbery case, and number 23-1256, which is a drug conspiracy case. Mr. Melendez pleaded guilty in the Hobbs Act case and was convicted after a 13-day trial in the drug conspiracy case. The cases were consolidated for sentencing, and Mr. Melendez was sentenced to concurrent terms in each case of 156 months. I want to address two issues which we think requires that Mr. Melendez's sentence be vacated and the cases remanded for resentencing. First, is that the drug quantities attributed to Mr. Melendez were double-counted, resulted in a sentence based on a significantly higher offense level, an offense level of 28, calling for 210 to 262 months, as opposed to an offense level of 26, calling for a sentence of 168 to 210 months. In the course of the trial, the government produced evidence that over a three-month period, Mr. Melendez had purchased a total of 3,288 grams of cocaine from Cordova, his only supplier. Each purchase was documented by wiretaps and also physical surveillance, and there was no evidence that Mr. Melendez or his alleged conspirators received any cocaine or purchased any cocaine from any other source during the course of the alleged conspiracy. Nevertheless, the district court concluded that Mr. Melendez was responsible for 4.2 of cocaine, a full kilogram more than the evidence showed that he had actually received. This figure was erroneously arrived at by attributing to Mr. Melendez amounts of cocaine that he had allegedly distributed, thus double-counting amounts that had already been attributed to him. Thus, the court attributed to Mr. Melendez 120 grams of cocaine that had been cooked into that was allegedly distributed to a person by the name of Burgos on April 2nd of 2019, and 400 grams distributed to Richards on April 3rd of 2019. This 542 grams of cocaine were clearly part of the 750 grams of cocaine that Mr. Melendez had allegedly purchased from Cordova two weeks earlier on March 14th of 2019. So, there's no evidence of any other cocaine being received in that period of time. We have the 750 grams that he received and a number of grams, 542, that were distributed after the receipt of the 750 grams. Similarly, 400 grams of cocaine were distributed to Richards on April 22nd of 2019, and those 400 grams were clearly part of the 500 grams of cocaine that were attributed to Mr. Melendez as a result of a purchase. Were there findings by the district court of how it got to the figure it got to? No. It was just a figure given? The figure was contained in the pre-sentence report, and the government argued that that was the total was- And was objection made below to the PSR amount? The objection was made. Objection, I believe, number 20 was made. The government argues here that somehow this was waived. However, it's clear, and we point out in the reply brief, that objection was made specifically to the double counting, including the 400 grams that was distributed to Richards that had been purchased two weeks earlier from Cordova. And when you say including that, as to all of it or just a portion of it in the objection? Because if I'm following the government's argument, they're saying that there's a harmless error component, because even if we take away the objected to part, what remains still meets the threshold, so it's harmless. Is that right? The government focuses on that 400 gram distribution and says, if that was properly counted- It wouldn't change anything. The other wouldn't make a difference. However, as we point out, that was properly objected to, and there is no basis for concluding that there was any other evidence- What I'm asking though, just specifically below, was there an objection to anything other than the 400? Yes, specifically, and as we point out in the reply brief, we point out when and where that objection was made. It specifically refers to the 400 grams that was distributed as a result of the purchase on April 12th. I'm sorry, the way you just answered it confused me. You said you specifically objected to the 400 grams, right? Yes. I'm asking whether there's a specific objection to any other amounts as being double counted. Oh, yes. Yeah, the objection was made to all of the double counting, including what I outlined before, the crack, the- But was a specific objection made as to what was double counted? Yes. Beyond the 400? Yes. The objection was made to all of the alleged distributions that were attributed to Mr. Melendez, despite the receipts. And then the district court made no finding as to any of those distributions it was including. It just adopted the figure. Exactly. There was no specific findings. And of course, we argue that in the absence of specific findings, there's no basis for, doesn't provide for adequate appellate review of the findings. And for that reason, since the guideline calculation we say is wrong, we're entitled to- If we thought there was only a problem with the 400, not saying that's what we think, but if we thought there was only a problem with the 400, do you have an answer to the harmless error point? Excuse me? If we thought there was only a problem as to that double counting as to the 400, the harmless error, do you have a response to that? I know one response is it was more than 400. That's a problem. But if we were of the view that the only problem had to do with the 400 being double counting, would it be harmless error? Are you agreeing that it would be or not? No. If that 400 was taken out of the calculus, then it still would affect the- I thought they said it wouldn't affect the- I don't know if it's the guideline calculation because it still would be over the threshold. It would be three and a half rather than four. No. I would agree that if the 400 grams was properly counted, then it would be a harmless error issue. Yeah. No, I'm asking if it was not properly counted. But subtract the 400, what do you have left? Don't you still have more than 3.5? My understanding is the government is arguing that if you just look at the 400 grams and if that was properly counted, then it's harmless error. And I'm agreeing with that. And I'm saying that it's clear, however, that there is no basis for counting that 400 grams no matter how you look at it. And the government's argument that there was somehow other evidence in wiretaps or other inferences that could be drawn from the evidence, that was not presented to the district judge. They're arguing that on appeal for the first time. And they did not make that argument to the district judge. Thank you. Thank you, Your Honor. Thank you, counsel. At this time, would counsel for the appellant, Rodriguez, please introduce himself on the record to begin? Thank you. May it please the court, counsel. Raise your mic. It'll be easier to hear. Thank you. Thank you, Your Honor. Rory McNamara for Juan Rodriguez. If I may reserve two minutes for rebuttal. You may. Thank you, Your Honor. By comparison, the evidence against Mr. Rodriguez was not particularly strong. The government never observed him with drugs, arguably aside from the two grams or so that were found in a bedroom in which he might have slept. The no cooperating witness testified that he was part of some conspiracy. And the jury heard no recordings between Mr. Rodriguez and any alleged conspirator other than him. What's the ground of error you want to focus on that argument? We'll start with the 403-404 issue, which is there was really no need for that evidence to come in that the agents surveilling the co-defendants in this case were members of the gang unit. And that, by implication, those co-defendants were, therefore, themselves, in fact, gang members. And from there, it's but a short leap to infer that there's this shared common purpose to commit further crimes. And in this case, I know that that, in many cases, would be a seemingly minor error. But here, the jury did indicate through one of their notes that they were having some difficulty finding more than a buyer-seller agreement. So I would argue that there's no probative value for it. There was no limiting instruction, as was asked for by defense counsel. What specifically was asked for? There was no specific request for a limiting instruction. There was just a limiting instruction. It was shut down pretty summarily. So you never asked that the jury be told that there is no claim in this case that they're a member of any gang. Right. Well, there was asked for a limiting instruction. I think that that would have been the next step. It was shut down pretty summarily. So we never got to that step. What do you mean when you say it was shut down summarily? I said denied right there. They said overruled. Overruled. Yes, thank you, Your Honor. I'm using the wrong terms here. That dovetails. Your objection was overruled. The objection was overruled, correct. I thought you asked for a limiting instruction, then he said overruled. Correct. That was overruled, and it went nowhere from there. Now, it wasn't put on the record what the nature of the limiting instruction could have been, but it certainly would have been. You can't infer from that that these folks were gang members. In fact, the case cited in the red brief to show that this is supposedly okay, there was a very vigorous limiting instruction that said, you absolutely cannot use this to infer that these individuals were gang members or that they were towards guilt in any manner. So that's different in our case, and I think that dovetails with an obvious error claim that we have here about the jury note, about the definition of conspiracy that Judge Hillman gave. There was something in the circumstances missing, and that is when the jury indicated that they were having difficulty finding more than a buyer-seller agreement. It is, I think, incumbent upon the judge to say that there needs to be not only intent to have this transaction here, but there needs to be intent to further a separate criminal objective to redistribute the drugs, in other words. And I think that was missing from the numerous iterations of the discussion of the elements of the offense and from the re-instruction here in this case. And I think that both of those issues go to the same thing in this case, that the evidence against Mr. Rodriguez was comparatively weak. And certainly on this issue, we know that the jury had some difficulty. Another issue, which I can touch on, is the interpretive testimony from the case agent. Bente Tuolo had testified for the first five days of trial and was allowed, over some objections, I do have some obvious error claims in there as well, that single-digit numbers actually mean multiples of 100. And that, in fact, those numbers were references to cocaine rather than other things, possibly synthetic marijuana and marijuana itself. And the problem in this case is that there was really no objective basis for that put on the record. In fact, it's very difficult to cross-examine a witness about that sort of thing. When it was done by one of the co-defendants in this case about the comment, oh, there's 531 in one piece. And the offered interpretation was that that's 531 grams of cocaine in one piece. And when asked what the basis for that was, he said, well, the declarant's criminal history and the statements that the declarant has made to me out of court, that was stricken appropriately, as it should have been. But I think that's indicative of the difficult time that counsel will have in getting to the objective basis of interpretive testimony about what is really best left to argument. So how's that to work? If conspirators talk in a shorthand jargon, the jury's just to hear what they said and the lawyers tell them what it means? Why isn't it better to have someone who's familiar with that jargon say what it means subject to cross-examination? Well, I think the difficulty with the cross-examination part is what I mentioned. You're going to get off an inadmissible information or reasons that are not permissible basis to draw those conclusions on prior convictions on a criminal record. So I do think that without an objective basis in the record, that needs to be left to closing argument. What do you have in mind could be the objective basis? Well, in other cases, this court has said that an appropriate objective basis is that the case agent or the witness who is testifying and offering this testimony was a participant in the conversation and knows quite well what they were referring to. Anything short of that? Anything short of that? Sure. There could be specialized knowledge that I know that after this incident that this individual was caught with approximately, for example, 531 grams. Instances like that. So when we're talking about numbers, it really does need to be something concrete. When we're talking about, I know we've also assigned error to other things, expressions about do one up. But there was nothing here like, I listened to all the tapes. And in context, if you've listened to all of it, you can tell from earlier conversations that this must be a reference to an earlier. In light of the earlier context, it's clear that this number must be a multiple. There's nothing like that was offered as a foundation here. Nothing that specific. There were general comments, if I may finish. Thank you, Your Honor. General comments that I have listened to all the tapes. And I guess it could be inferred from that by the jury that that's why. I guess what I'm having, just to follow up on Judge Chiara's question, let's say, so generally the police officer says, I've listened to this whole set of tapes. And here's my assessment in light of that is what it means. Then on cross-examination, you say, OK, so was there some earlier reference that indicates that seven meant 700? And then he says, no, I can't point to anything like that. But at that point, is the idea then it was impermissible to have him testify? Or is it just his testimony is not going to be worth very much because it was just exposed to have no foundation on cross-examination? That's why I'm having trouble understanding how it practically is supposed to work, this objection. Because in Albertalli, we talk about a very set of dangers from allowing it, such as bolstering, et cetera. But I'm just not entirely clear. Yes, there's a risk of bolstering. It's also, as Judge Chiara says, important to have help to the jury. So then in a circumstance where I say, well, I've listened to everything. So I'm going to be helpful to the jury. Here's what I think seven means. It means 700. And then the cross-examination shows we didn't really have any basis from the earlier conversations to say seven means 700. Does that show it should be thrown out because it's bolstering? Does that show that it was sort of testimony, but then it turned out not to be helpful in this instance and cross-examination revealed it? So no error? What's the state of the case law? Of course, this is the difficulty of having this come in as lay witness testimony rather than laying out the basis at the beginning. But Albertalli says you can have it as lay witness testimony in some circumstances. Correct. And I think the problem is exactly that imprimatur. Maybe we're missing that objective basis. But after 13 days of testimony altogether and five days from the case agent who looked and referred to all those phone calls. Let me ask you this way. How did the objection go to the use of the single digit testimony? It was just an I object. And it stopped there. When he said seven means 700 or something like that? Correct. And then the judge said overruled? Overruled. And it was very much a quick spoken objection like that. Thank you, Your Honor. Thank you, counsel. At this time, would counsel for the government please introduce yourself on the record to begin? Good morning. May it please the court. Karen Eisenstadt for the government. If the court doesn't have a different preference, I'll address the issues in the order that the defendants raised them. So as to the drug amount of 4.2 kilograms, he did not preserve his objection to the 400 kilograms described in paragraph 58 of the PSR. And as I think he now has acknowledged, if that was correctly counted or there was no clear error or plain error in that finding, the rest of them the court can bypass because they would not affect the offense level at that point. He has not argued in his reply brief that it was a plain error. So if the court finds that it was not preserved, then the issue is at this point waived. He doesn't dispute that he never cited paragraph 58 in his objection in the sentencing memo at sentencing. So that's not in dispute. His claim, however, is that it's just a typo, an incorrect citation. The court, it was clear when he said 400 grams in paragraph 45, which is what he said in his objection, and 45 was, in fact, a 400 gram transaction, that he actually meant the 400 grams in paragraph 58. And his argument is that the district court, that should have been clear to the district court because that's the logic of the objection. It would be a different thing, I think, if his objection to the district court followed the same logic as his objection, his argument on appeal. But it did not. And I think it's very clear that's the case when you look at the different bottom line conclusions. So he's telling the court now the correct number should be 3.2 kilograms. In the district court, his argument was variously that it was 1.5 kilograms or 1.7 kilograms. So they're not even in the ballpark in terms of a comparable objection. He did not, the reason the numbers were so different was because his district court objection didn't follow the logic of his appellate objection that, you know, this sale or these two sales came from this prior purchase, et cetera. Instead, he's making arguments like the April 27, 700 gram purchase just didn't exist. It should be 100 grams, which doesn't make any sense because 700 grams was a purchase. It wasn't a sale. It was a separate purchase. Can you just help me with the math? Why the 400 is the key number, given what I understood your opponent's counsel to be at the beginning, which was that everything came from Cordova. And so there was all the distribution beyond the 400 was double counted. But maybe I just misunderstood. Right. So the argument, the government is trying to sort of simplify the issue for the court. We focus on the 400 because that one was not cited to the district court. So we had a plain error argument specifically about that one. But the total amount you're talking that he was found is 4.2? 4.2. And what is the number at which it makes a difference? 3.5. Right. So if you take out the 400, you're still over 3.5. So the base offense level doesn't change. And that's what I guess I'm confused by. I thought the defendant was also objecting to the inclusion of other amounts. Is that wrong? No, he is objecting to the inclusion of other amounts. So in other words, even if he's wrong on the 400, that would get you to 4.2. Is he then also identifying other amounts that were double counted that would get you below 3.5? Does that make sense? I see what you're saying. Yes. I think the other amounts, the total was 400, 120, and 22. So I think if you take all of those without this 400, I have to sit down and do the math. My understanding is I think that would then take him. So if the government is incorrect about it. He needs the 400 to be in for him to have an argument, even accepting that there was the other kinds of double counting he says occurred. Yeah. So the government's focusing on the 400 just to make it simpler. And the issues are similar, I think. So the issue here is that, as I said, his argument in the district court didn't follow the logic of his argument in his brief. And that's why I don't think it's clear at all, and it wouldn't have been clear to the court that when he cited paragraph 45, which again was a 400 gram amount, that he actually meant paragraph 58, which was a different 400 gram amount. So paragraph 58, which is what he's objecting to now, was not something that was brought to the district court's attention as an amount he was specifically claiming was double counted with anything else. Is it obvious that it's error? No. So even if the court deems the objection preserved, it's a clear error finding review. And it's not clear error, because we can see from the trial record that the whole premise of his objection of double counting, that these amounts stated in these particular purchases were the only purchases he ever made, is just false. That's not what the trial record showed. And the district court presided over this trial. Everyone was there. And there is evidence specifically as to April 13th, which is the day after the April 12th purchase, that he's trying to say is the only purchase that could possibly have fed into April 22nd. There is a phone call, and this is actually cited in the PSR, where they're discussing the following day, Melendez called Cordova seeking additional cocaine. So that's on paragraph 48 of the PSR. And then, of course, the trial record gives a more fulsome explanation what that call was. And it's not just that they were discussing it, but they actually came to an agreement. He says at the end of the call, all right, I'll be there in about an hour. As to the paragraph that there was the objection to, which he now says was the wrong 400 to be objecting to, did the district court make a finding as to that objection? He didn't make findings specific paragraph to paragraph findings. I think the government's argument was like the entire premise here is wrong. The premise here is I only bought on these dates from Cordova. There's no evidence I ever bought anything else from Cordova or any other supplier. And that's just false. I think it's very clear from the trial record that there was evidence of other purchases. We just didn't focus on those at trial. But the part that's concerning me somewhat is, it's one thing to say he bought not just from Cordova, he bought 60 grams from Cordova Prime, and he bought 70 grams from another person. It's slightly different to say there were other suppliers. I'm not going to tell you what amounts there were from any of them. Trust me, it comes to 400, even if you look outside Cordova. And then the district court says, that's fine, I agree, even in the face of an objection. That seems puzzling to me because, I mean, you'd want to know, well, yes, there were other suppliers. What were the amounts the other suppliers had? How do we total them up? What's the math come to? Because the number matters. But what's your answer to that? So the government put in the PSR sufficient facts to support by a preponderance of the evidence. It's drug calculation. But it was objected to. The number was objected to. The number, the total was objected to. And the objection was based on an argument that was contrary to the trial record, that there's no evidence of other suppliers. So you can just go to Cordova's PSR, that's all. And that there's no evidence of additional purchases, which is also just false. So I think it's not quite. In other words, it doesn't have to be some evidence of other suppliers or other purchasers that plausibly exceed in volume what you need to eliminate the double counting. If all he purchased from someone else, how much? I don't know. Well, let's assume it was one. And I mean one, not 100. Based on your expertise. Yeah. Right. So you would have a problem then. Right. But as again, this whole thing was presented at trial. And if you just look at the wiretap conversations that were admitted at trial and everyone heard, the evidence is right there. They're making these deals constantly. We just didn't focus on every single one at trial because it would have been too long of a trial. And we may not have had surveillance as to some of them so they weren't as strong. But this is a clear, if it's preserved, it's clear error. And there is a reasonable interpretation of the record that he did obtain more supply. And that was the entire premise of his objection is that you must assume he did not. And that's incorrect. I think the district court, having presided over the trial, was aware that that was just a ridiculous claim. These constant other sales, are there amounts connected to any of them in the record? Correct. So for example, I think on the April 13 call, they're talking about like 250. I mean, there's many calls. And if the court wants me to identify all of them, I'd be happy to do so in a 28-J letter. But there's multiple calls. And there are amounts associated with those calls. And again, I mean, I think part of the reason the court may not have focused in the way that your honors are suggesting is because, as I said, I don't think he clearly preserved or had a logical argument to the district court that would allow the district court to say, OK, you're saying this amount in this state. Let me see if I can find the evidence. I mean, his district court objection was all over the place. He's saying some 700-gram purchase just didn't happen. But I mean, that's a purchase. It's not a sale. It's a separate purchase. There was a call at trial in which Melendez is talking to Cordovan, says seven or eight. That's what he wants. And so I don't understand what the basis is of that. In the government sentencing memorandum, what did they put? What did the government put forward as the sales that got to the total you needed? Did it identify specific sales and say, these are the sales that get you above the threshold? Or these are the transactions that involve the amounts that get you to the threshold? Correct. I mean, that's what was set out. There's a chart in the PSR that lists all the amounts that are being counted. And those amounts on that chart include these other supplier transactions you're now referencing that the district court could have relied on or do not? I mean, they're just different transactions. The question is, wait. Do you understand what I'm asking? It's a chart. Chart has transactions with quantities assigned to them. Correct. Presumably that chart, when you add it up, comes to the above the threshold number. Correct. OK. When you're saying it's now not a problem, because there were all those transactions Cordova related on the chart? I think one of them was, based on the evidence, not Cordova related. But I mean, we didn't identify who the other person was. And how big was the non-Cordova amount? Are you asking how much it was? I got almost the whole thing conversation that Rodriguez has with Melendez. And that was interpreted at trial to be a kilogram. And the reason it doesn't sound like it's from Cordova is because the response Melendez has is they gave you almost the whole thing. So it doesn't sound like he's talking about Cordova. So the 3.2, that gets you to the 4.2. There's one kilogram non-Cordova on the chart. And then 3.2, that's all Cordova? I think what's confusing here is the way the government did it was, it was not only adding up purchases. It's just adding up episodes, transactions. OK, I'm just, there's a chart. And the chart was the basis for the number of 4.2? Is that right or wrong? Well, the basis is the PSR offense facts, which lay out each amount. And then the chart just sort of combined them and did the math and said this equals 4.2. And if I'm following you, that chart is all Cordova related episodes except for one. Correct. I mean, I don't know that that's clear because some of them are sales. So they're not purchases. So Cordova was involved in the purchases, Melinda's purchases from Cordova on many occasions. I guess I'm just trying to get this point. One of the arguments you seem to be making is it's not a problem because there were other suppliers. So if the objection is you're double counting because you're doing everything from Cordova plus the distribution, that's not fair because you're then double counting the same drug. And then you say, don't worry about it. There were other suppliers that could have gotten you to the 4.2. And I'm just asking a simple question. Are any of those on the chart? So I think what's the government, the way the government put together the offense facts that have these numbers was not to say here are all the purchases from Cordova and we're adding them up. And that's the way the defendant's arguing. It should be done. But the government just used the same episodes it focused on at trial, some of which were purchases, some were sales, some were both, and put those into the offense facts and then added them up. And then the one that where there was strong evidence they were the same amounts, May 6 and May 8, excluded that because it was clearly the same amount. So the government's position in writing this is that these are all different amounts. Otherwise, we wouldn't have counted them separately because the one that was the same amount we didn't count. And so it's not the logic of the way the government put it together was not these are all the sales from Cordova and here's one without Cordova. That was not how it was put together. It was borrowed from the way that the evidence came at trial, which was a mix of purchases, sales, et cetera. I'll ask you one last way. The suppliers that you're saying can get us to 4.2, even apart from Cordova. That's the argument you're making, right? And I think there's two things. Since we're on clear air, I'm just looking generally at the record and whether there is a reasonable interpretation of the record that supports the district's finding. And that's based on the fact that there was evidence of other suppliers beyond Cordova. I think two things. The government's arguing there's one, he's wrong about there's no evidence of other suppliers. So that premise is incorrect. And second, he's wrong that these transactions with Cordova that we focus on a trial with the surveillance, et cetera, were the only purchases Melendez ever made from Cordova. That's just simply not consistent with the trial record. In the trial record, I mean, Melendez mentions this on page 12 of his own opening brief in the offense facts that the day after the April 12th purchase, they're on the phone again discussing the next purchase. And then at the end of that call, he says, all right, I'll be there in an hour. So the idea that there wasn't evidence in these calls that they're constantly talking about additional purchases is just false. That's a misrepresentation of the trial record. Generally, if you're going to include both, if you have a middle person, and you're going to include both purchases and sales by that person, you've got a serious potential for double counting. Right. So I think the potential's there. And if there hadn't been a trial on this, then the PSR might be a bit confusing. Because you'd say, I don't understand why you can include these sales. How do we know anything happened in between? But there is an entire trial record here where the evidence came in that there are many things in between. We just aren't focusing on that trial. But the evidence is there. And it's a reasonable interpretation that those purchases occurred. Yeah, I guess the question is, in that circumstance, there's two different points. There's the point, is there evidence in the record from which a finding could be made that could support it? And then the question of, what is the obligation of the district judge to make such a finding in order for us to get there? So you seem to be making a compelling case about, there is such evidence if a finding were made. And I guess what I'm just, do you have any thoughts about, what excuses the district court from having to make a specific finding in the face of objection so we can then, on review, know not just, oh, there's a big trial record. There's lots of stuff. I mean, I'd rather not make the finding myself. So what was the transactions that the judge was relying on that get us to that number? I mean, I think. One thing, if there were no objection to the PSR, I completely understand that. But when there is an objection to the PSR, that's what. Now, maybe that just goes to your point. There really wasn't an objection in a meaningful sense because it was only to one thing. And that was wrong. And that's not this point. So first, I think what Your Honor just said is correct. As to this 400, if we focus on that, which is, I think, dispositive if he's incorrect about it, he didn't make that objection. So as to that, I don't know that the district court had any obligation to do anything. And beyond that, I mean, I don't see a problem with saying, because it's clear error view, and this isn't a situation like an explanation of a sentence where there's a separate duty, you must give the sufficient explanation. The court had the issue before it, and it made a finding of the drug amount, 4.2 kilograms. But how would we review? He cannot show that it's clear error. And so you review based on the record that's before the court. Is there a reasonable interpretation of this record on which what the court found was correct? If so, then there is no clear error. I also want to briefly address the gang unit issue that Rodriguez brought up. Putting aside whether that was probative value, I mean, every witness is introduced by, you know, who are you? Where do you work? So I don't know that that technically has any probative value, but it comes in basically for every witness. But putting that aside entirely, it's, there's no way that that affected the verdict. We're talking about a 13-day trial, and he points to two officers who mentioned gang unit on the sixth day, and gangs were never mentioned at any other point in this trial. There is no suggestion anyone was in a gang. There's no argument about a gang. So I don't, it's highly probable there's no effect on the verdict. Isn't the whole case though, whether these were one-off transactions or whether it was part of a larger group? I don't think that's correct. So that's how he characterizes it. Well, didn't he seek a buyer-seller instruction for that purpose? So he did not seek, Rodriguez did not seek a buyer-seller instruction, which is why the whole thing is on plain error. So that's actually not correct, I think, going in. He's sort of seeking to reconstruct it as that, but that was never the issue in the case. His arguments were like, these, I was not talking about cocaine. I was talking about something else, which is their primary argument, or just that there wasn't enough cocaine. But there was no request for buyer-seller instruction because I think that was just not like a plausible rendition of the evidence. Is the recounting of the jury question not correct? So the jury question, going, moving to the buyer-seller instruction issue on plain error. No, no, I don't want to move to it. I'm saying, wasn't the, they made a point about the jury asking a question about the buyer-seller relationship. Correct. Well, I mean, you can interpret that, yes, as meeting that, yes. That seems somewhat inconsistent with the argument that you were just making, that the question of whether this was just a buyer-seller, or whether it was a group endeavor, wasn't really at issue. So I think, I don't know why the jury, what they were necessarily thinking about when they asked that question. He says, they must have been thinking about my May 25th transaction. I don't think there's any basis for thinking that. That was not the focus of the government's case against him, not even mentioned in closing argument at all. But one thing that I think may have been driving it is that here, all the transactions were among the members of the conspiracy. So they're buying and selling amongst themselves. So I think the jury may have been asking, is that enough? Or do we need to look further to what they're going to do with it after they transact amongst themselves? And the district court gave, I think, on that interpretation, a very clear answer that that transaction among themselves that you're asking about is not enough. You need to find they have an intent to distribute, which in that context means redistribute. I just want to ask you one more question about this, and then about the Albertelli issue. Yeah. Judge Codd, if you have anything further on this. Was it error to deny the limiting instruction? I don't think in this context it was, because I think the court's logic is like, this testimony is a non-event. We could give a limiting instruction. That would just, I think, bring more attention to a thing that no one is thinking about discussing at any point during the trial. And it actually had been. There had been a motion in Limine before trial to keep out any evidence of gang affiliation in the court. The government said, we're not going to bring it in. So that was, everyone knew going in that that was not something the government was going to. But that's sort of, you don't see a tension between those two points? No, because the way the evidence came in at trial, there was no- We really don't want gang affiliation in. And they say, okay, yeah, that would be really kind of prejudicial to put it in. It has nothing to do with the case. But we'd like you to know the person investigating the case were with a gang unit? I don't think the government specifically tried to elicit gang unit. I think that's just where they were. And then when they said, like, a limiting instruction, consistent with the idea we'd like to keep the gang out, it seems a little bit of an odd response to say, who could possibly worry about gang affiliation? I mean, I think it was within the court's discretion to handle it the way the court did, given the idea that it's just a couple utterances. I mean, the word gang literally only came up in the 13-J trial, like, on these occasions in officers. We heard from officers from many different agencies, ATF, state police, et cetera. And there's two guys who mentioned they're in the gang unit. And there's no connection made between that and why they're on the case, that, you know, anyone suspected these guys are a gang. But I think, more importantly, it's harmless. There's no way that this affected the verdict. And to the extent there was an error, then I would submit that it is a harmless error. On the Albertelli issue, could you just help me figure out what does that case mean and how do we apply it here? Sure. And I think specifically to the question you were asking, Mr. Rodriguez's counsel, if, say, on cross-examination, you say, what, how'd you get 700? I don't really have a basis. I think Albertelli and also this court's decision in Dunstan kind of explained sort of practically how that's supposed to work, which is that if you really have a concern, there is no explicable basis, no objective basis whatsoever. You can request of voir dire, sort of outside the presence of the jury, to hash that out before the testimony even comes in. So that happened, I believe, in Dunstan. He didn't request that here as that. And then on cross-examination, you know, once it comes in, then you're free to, you know, attack it and suggest it means other things or ask for the basis and attack him on the argument that there is no basis. But I think as a practical matter, that's how it would work, is that if there's a real concern about it, you can address that before it goes into the jury. And was there a basis for the seven being 700 here? Yes. So as the government said, what Albertelli said is the agent should be prepared to give his basis, which I think the agent here was, but they didn't actually ask the basis of him. And I think the reason they didn't ask is because it was fairly obvious what he was going to say, and it wouldn't be helpful for them to have him say that in front of the jury because it would be, you know, all the things the government's arguing about, like why would you take two grams of cocaine to Manchester, New Hampshire on a regular basis? Why is that worth it? So they didn't ask because I think they didn't want the jury to hear what it was, but I think everyone knew what it was. And that is an explicable objective basis that he was prepared to give, should anyone ask for it, either in voir dire or in cross-examination. So I think under that, the testimony came, the district court was exercising its discretion question by question fairly carefully under this court's precedence in Albertelli, Dunstan, Belanger, and that there was no abuse of that discretion here. Thank you. Thank you. Thank you, counsel. At this time, counsel for Appellant Rodriguez. Two-minute rebuttal. Thank you. Not only was there a motion in limine about the gang evidence, there was a request at jury selection to screen in the questionnaires about any prejudice jurors might have towards gang members. So it was something that certainly there was a need to keep out of trial. Didn't defense counsel at one point mention gang signals? Gang signals? I don't recall that specific moment, so I couldn't comment on that. There were, after those, two elicitations from the officers about their gang affiliation, there was a very conspicuous attempt with the subsequent four officers to avoid that testimony, which I think that just drew as much attention to the fact that these were also gang members, excuse me, gang unit officers here. Now- Your premise is that if the jury knew that the officers were in the gang unit, they would therefore infer that the defendants were in a gang? That's correct. But in two weeks of trial, there is no testimony by anyone or a claim or argument by the government that they were in a gang. That's correct. I do think the absence of the limiting instruction, jurors were free to use that gang unit testimony, evidence in any manner, including to make that inference that I just mentioned. There was no buyer-seller defense before the instruction, excuse me, before the jury- If you could just try and meet the question. Oh, I'm sorry. In the sense that one way to understand it is that it wouldn't be harmful because there was nothing to draw on for the juror from that mention of the affiliation to link them up with the gang because there's no one's arguing gang affiliation, et cetera. I suppose, what's the answer to that? Yeah, I think there are two kind of avenues here. One is gang membership just has an awful set of baggage with it as is. It's very prejudicial. We don't like gang members, which is why there was, if I may finish answering this question, thank you, a request at jury selection. So you've got a second tier inference. You've got the first inference being, well, because the officer works in a gang, the defendants must be in a gang. But they're not being charged with being in a gang, but I'll infer that if they were in a gang, then they did other bad stuff like the stuff they're accused of. It's two inferences, one piled on top of the other. Think of it this way. If they said they were firefighters, I don't think any jurors would have been unreasonable to suspect that they saw fires and were looking for fires on a daily basis. So I think it's tied very closely. It's just slightly different though because they're not saying they were gang members. They're saying the people who were investigating them were in the gang unit. Correct. So that's why there's a double inference. Correct. There is a double inference there. I'm not trying to back away from that. But you said there is a case in which it was excused because a limiting instruction was allowed. That's right. It's mentioned in the red brief and in the gray brief. I'm sorry I don't have the name in front of me. I should sit down. It's a red light. Thank you, Your Honors. Thank you, counsel. That concludes argument in this case.